UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**FEDERAL DEPOSIT INSURANCE CORPORATION,**
in its capacity as Receiver of
Connecticut Bank of Commerce,
        -Plaintiff


        -v-                      CIVIL 3:05 CV 929(CFD)


**WACHOVIA INSURANCE SERVICES, INC.,**
        -Defendant


**RULING ON DEFENDANT'S MOTION TO COMPEL**

The defendant, Wachovia Insurance Services Incorporated ("Wachovia") moves for an order compelling non-party Great American Insurance Company's ("Great American") compliance with a subpoena served on it on February 8, 2007. (See Dkt. # 64 Ex. B.) The motion **(Dkt. #64)** is **GRANTED** in part and **DENIED** in part consistent with the following ruling.

### I.   Facts

At the time of the incidents described in the complaint Connecticut Bank of Commerce ("CBC") was engaged in the business of providing loans to customers and taking back a security interest in their receivables. Wachovia was CBC's insurance agent. CBC allegedly contacted Wachovia and requested that it procure for CBC

an insurance policy with identical coverage to one CBC previously had with Lloyd's of London.  The Lloyd's of London policy contained coverage for losses incurred when a customer obtained a loan using fraudulent documents to show the existence of accounts receivable that did not in fact exist.

In response to CBC's request, Wachovia obtained a policy (referred to as a "Financial Institution Bond") from Great American. Wachovia allegedly informed CBC that the Bond contained identical coverage of that contained in the Lloyd's of London policy.  CBC later learned that two of its customers, whose loans were now in default, had obtained the loans using fraudulent documents.  The loans were therefore unsecured and uncollectable. It is alleged that the losses incurred totaled more than $3 million.

CBC filed a claim with Great American under the Bond for the losses incurred.  Great American denied the claim because the Bond did not, in fact, contain fraudulent invoice coverage.  The FDIC in its capacity as Receiver of CBC is suing Wachovia under theories of negligence and breach of contract for Wachovia's alleged failure to procure for CBC an insurance bond containing coverage for fraudulent invoices.

## II.  Discussion

The dispute presently before the court involves topics listed in a subpoena as subjects for the deposition of Great American's

Rule 30(b)(6) representative and several requests for the production of documents also contained in the same subpoena.

### A. Document Request # 8

Document request 8 asked Great American to produce "all documents reviewed in preparation for the instant deposition." (Dkt. # 64 Ex. B.) Great American contends that, although the underlying documents are not themselves protected by the work product privilege, *the process by which counsel selected the documents to prepare the 30(b)(6) witness is work product* and, therefore, the documents should not be disclosed because they would reveal the attorney's mental impressions. In support of this contention Great American cites <u>Sporck v. Peil</u>, 759 F. 2d 312 (3d Cir. 1985). Relying exclusively on <u>Nutramax Lab. Inc. v. Twin Lab. Inc.</u>, 183 F.R.D. 458 (D. Md. 1998), Wachovia asserts that the disclosure of the documents to the 30(b)(6) witness constitutes a "limited, implied waiver of the attorney work product doctrine" under Rule 612 of the Federal Rules of Evidence. (Def's Mem. Supp. at 7.) The court does not address Fed. R. Evid. 612 because it finds that the documents in question are not protected by the attorney work product doctrine and are therefore discoverable.

The work product doctrine, as codified in the Federal Rules states:

> a party may obtain discovery of documents and tangible things otherwise discoverable...and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative

> (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3). Three requirements, therefore, must be met for a document to receive work product protection. "First, the material must be a document or tangible thing. Second, it must have been prepared in anticipation of litigation. Third, it must have been prepared by or for a party or its representative." Cornelius v. Consolidated Rail Corp., 169 F.R.D. 250, 253 (N.D.N.Y. 1996) The party claiming work product protection bears the burden of establishing all of the essential elements. Id.; In re Horowitz, 482 F.2d 72, 82 (2d Cir.), cert denied, 414 U.S. 867 (1973)

"The work-product doctrine...is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d. Cir. 1998)(internal quotations omitted). As the rule itself makes clear, work product enjoys only limited immunity from discovery. For "fact" work product, that is work-product that does not contain legal opinions or conclusions, the party seeking discovery must meet the "substantial burden" and "undue hardship" tests outlined in Rule 26. Maloney v. Sisters of Charity Hosp., 165 F.R.D. 26, 30 (W.D.N.Y. 1995). Opinion work product, on the

other hand, constitutes thoughts, strategies, legal opinions and conclusions by an attorney. See Loftis v. Amica Mut. Ins. Co., 175 F.R.D. 5, 11 (D. Conn. 1997). Opinion work-product is given stronger protection and is discoverable only in rare circumstances where the party seeking discovery can show extraordinary justification. Id.; S.N. Phelps & Co. v. Circle K. Corp., 1997 U.S. Dist. LEXIS 713, No. 96 CV 5801 (JFK), 1997 WL 31197, at *7 (S.D.N.Y. 1997).

The Sporck case cited by Great American has been recognized by the Second Circuit as carving out a "narrow exception" to the third general requirement identified by Cornelius, that work product protection shields only those documents which are actually created by an attorney or her principal. Gould Inc. v. Mitsui Mining & Smelting Co., 825 F. 2d 676, 680 (2d Cir. 1987). In Sporck the court held that an unspecified number of documents selected by an attorney out of thousands of others and given to his client in preparation for an upcoming deposition were shielded from discovery not because the underlying documents themselves consisted of attorney work product (they were not created by counsel), but because disclosure of these documents would reveal the "counsel's selection process, and thus his mental impression." 759 F. 2d at 315. While acknowledging the existence of the Sporck exception, the Second Circuit has noted that the application of the exception depends on, among other things, a showing of "the existence of a

real, rather than speculative, concern that the thought processes of . . . counsel in relation to pending or anticipated litigation would be exposed. Gould, 825 F. 2d at 680.

The Second Circuit has addressed the Sporck exception twice since its opinion in Gould. In re Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991 (Paul Weiss), 959 F. 2d 1158 (1992); In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002 (Akin Grump), 318 F. 3d 379 (2003)[1]. Critically, these cases turned primarily on the issue of whether the documents requested were already in possession of the party requesting disclosure. See In re Grand Jury Subpoenas (Paul Weiss), 959 F. 2d at 1166; In re Grand Jury Subpoenas (Akin Grump), 318 F. 3d at 385. If the documents are already in possession of the requesting party it is at least arguable that the request is being promulgated not to obtain relevant information, but "with the precise goal of learning what the opposing attorney's thinking or strategy may be . . . ." In re Grand Jury Subpoenas (Akin Grump), 318 F. 3d at 385.

> It may be argued that, if the deposing attorney already has received the documents during the litigation, there is no reason to order their production a second time, for the only purpose this would serve would be to disclose,

---

[1] The Second Circuit has "entertained work product challenges to grand jury subpoenas even though neither Fed. R. Civ. P. 26(b)(3) [civil work product rule] nor Fed. R. Crim. P. 16(b)(2) [criminal work product rule] strictly applies in that context. In re Grand Jury Subpoenas (Akin Grump), 318 F. 3d at 384. Thus, the cases are relevant so far as they discuss the Sporck exception to the work product rule even though they do so in the criminal context.

indirectly, the mental impressions of the attorney who selected the documents to review with the witness.

Nutramax, 183 F.R.D. at 470.

The court acknowledges the Sporck principle and that it has been limitedly adopted by the Second Circuit despite thoughtful criticism of the principle by other circuits. See San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007 (1st Cir. 1988). However, after throughly reviewing the relevant case law and the parties' memoranda, the court finds, on the instant record, that Great American has not sustained its burden that the Sporck exception should be applied here.

The present record suggests that Wachovia does not already possess the documents it requests. As the party carrying the burden, Great American bears the onus of asserting that it has already turned over the documents requested. Had Great American previously turned over the documents in question, one would expect that it would have represented as much in its memorandum in opposition. Moreover, in light of Great American's non-party status, it is also likely that the documents have not been previously turned over because a subpoena is the only mechanism through which a party can obtain documents and other tangible things from non-parties. Fed. R. Civ. P. 34(c), 45. The subpoena in question appears to be the first one served on Great American by Wachovia.

The court further finds that the revelatory nature of the

documents requested in this case does not reach the level of those requested in Sporck. In Sporck the documents responsive to plaintiff's production requests would have revealed several specific documents, gleamed from the thousands of other documents already turned over to the plaintiff, and selected by Sporck's attorney to prepare Mr. Sporck for his deposition. 759 F.2d at 315. That is not the case here. First, as Wachovia points out in its reply memorandum, its request is not limited only to those documents which Great American's attorney revealed to its 30(b)(6) witness. Rather, the request seeks "all documents reviewed in preparation for the instant deposition." The 30(b)(6) witness may well have reviewed documents on her own without assistance from Great American's attorney. Further, whatever strategy was implemented to prepare the witness would likely be revealed during the deposition questioning itself. See In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F. 2d at 1017.

Various other factors also militate heavily towards disclosure here. The documents at issue were not created by counsel and not generated in anticipation of litigation. There is also no indication that these documents were intended to be kept private. Counsel for Great American could have reasonably expected that the information contained in whichever documents it chose to prepare its witness with would eventually come to light during the deposition. Finally, Great American asserts no argument that the

documents in question are irrelevant or otherwise not discoverable. These otherwise discoverable documents are also likely unattainable from any source other than Great American. See Gould, 825 F. 2d at 680 ("the equities might not favor the application of the Sporck exception if the files from which documents had been culled . . . were not otherwise available . . . .")

In sum, the court finds that Great American has not sustained its burden in showing "the existence of a real, rather than speculative, concern that the thought processes of . . . counsel in relation to pending or anticipated litigation would be exposed." Gould, 825 F. 2d at 680. As a general proposition courts should narrowly construe, not expansively interpret, exceptions to discoverability. Defendant's motion to compel as to document request 8 is **GRANTED**.

**B. Topic # 3**

Topic 3 seeks to elicit deposition testimony on "[a]ny and all claims made or submitted for consideration under the Great American Insurance Company bond issued to Connecticut Bank of Commerce, bond number 263-85-24, including any and all aspects of the claims handling process." (Dkt. # 64 Ex. B.) The argument contained in Wachovia's reply memorandum, (See Dkt. # 69 at 2-5), convinces the court that the information sought is potentially relevant. The damages calculation involved in the instant action could be affected if CBC agents were themselves involved in the fraudulent

invoice loans implicated here. Defendant's motion to compel as to Topic #3 is therefore **GRANTED**.

    **C.**    **Document Requests ## 13 & 15**

Document request 15 seeks "[a]ll notes, correspondence, recordings of any type, computer data, memoranda, and/or other writings, not otherwise requested which were exchanged among or between the following with respect to the alleged loss or the insurance which is the subject of the action: . . . ." The request then goes on to list sixteen individuals or entities. (Dkt. #64 Ex. B.) Great American maintains the same assertion that it made with respect to Topic 3, that any information sought about claims made on the bond other than fraudulent invoice claims is irrelevant. Great American also argues that the request is overly broad and unduly burdensome. For the reasons stated above, the court finds that the request seeks potentially relevant information. Great American has also not sustained its burden in proving that the request is overly broad or unduly burdensome. The motion to compel as to Document Request 15 is therefore **GRANTED.**

The motion, however, is **DENIED** with respect to Document Request 13 which asks for "[a]ny and all documents related to any of the claims raised in this litigation." (Dkt. #64 Ex. B.) The court disfavors these types of catchall requests. It is often virtually impossible to comply with these type of requests. Any good attorney can, in hindsight, always argue that a document, the

identity and contents of which are later discovered but that was never disclosed, is somehow "related" to a "claim" involved in the case. It is up to the requesting party to construe the claims in the case and more precisely request information that may be relevant.

### D. Topic ## 4, 5 & 6

The motion to compel with respect to these topics is **GRANTED**. The court agrees with Wachovia that whether the loss suffered by CBC here is covered under other provisions of the Bond is a potentially important issue in this case. The materials requested under these topics could show that Great American anticipated covering losses similar to those alleged to have occurred here. As such, the information may be relevant with regard to, inter alia, Great American's state of mind when it entered into the contract with CBC. There is no indication that the requests are unduly burdensome.

### D. Document Request # 7

The motion to compel with respect to document request 7 is GRANTED. The documents requested appear relevant and the court is unconvinced that they would be unduly burdensome to produce.

### III. CONCLUSION

The motion to compel **(Dkt. #64)** is **GRANTED** in part and **DENIED** in part consistent with this ruling. This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant

-11-

to the "clearly erroneous" standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges.  As such, it is an order of the court.  See 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this 19th day of March, 2007.**

**/s/ Thomas P. Smith**
**Thomas P. Smith**
**United States Magistrate Judge**